# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | **Hon. Manuel Barbosa** |
| | ) | |
| **TAN BOOKS & PUBLISHERS, INC.** | ) | **Case No. 05 B 70657** |
| | ) | |
| Debtor. | ) | **Chapter 11** |
| | ) | |

## NOTICE OF MOTION

**TO:   PERSONS LISTED ON THE ATTACHED SERVICE LIST**

　　　**PLEASE TAKE NOTICE THAT** on **Wednesday, September 16, 2009**, at the hour of **10:30 a.m.**, the undersigned shall appear before the Honorable Manuel Barbosa, United States Bankruptcy Judge, 211 South Court Street, Courtroom 115, Rockford, Illinois, and shall then and there present **FINAL APPLICATION OF TRUSTEE FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**, a copy of which is attached hereto and hereby served upon you.

Fred Caruso, Trustee of the Chapter 11 Bankruptcy Estate of Tan Books & Publishers, Inc.


By:/s Michael M. Schmahl _____
One of his Attorneys


Richard J. Mason, P.C. (ARDC #01787659)
John F. Pollick (ARDC # 03128122)
Michael M. Schmahl (ARDC #06275860)
McGuireWoods LLP
77 West Wacker Drive
Suite # 4100
Chicago, Illinois  60601-1815
(312) 849-8100

9846594

## CERTIFICATE OF SERVICE

I, Michael M. Schmahl, an attorney, hereby certify that the foregoing **Notice of Motion**, together with a true copy of **FINAL APPLICATION OF TRUSTEE FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES** was duly served upon each of the parties on the attached Service List via first-class mail, proper postage pre-paid, this 27th day of August, 2009.

_/s/   Michael M. Schmahl_____

Richard J. Mason, P.C. (ARDC #01787659)
John F. Pollick (ARDC # 03128122)
Michael M. Schmahl (ARDC #06275860)
McGuireWoods LLP
77 West Wacker Drive
Suite # 4100
Chicago, Illinois  60601-1815

9846594

## SERVICE LIST

Ronald R. Peterson
Jenner & Block LLP
One IBM Plaza, 38th Floor
Chicago, IL 60611
Facsimile: 312-840-7381

George Hampilos
Schirger, Monteleone & Hampilos, PC
308 West State Street, Suite 210
Rockford, IL 61101
Facsimile: 815-962-6250

Sheree Dandurand
Office of the United States Trustee
District Office
780 Regent Street, Suite 304
Madison, Wisconsin 53715
Facsimile: 608-264-5182

David H. Carter
One Court Place, Suite 401
Rockford, IL 61101
Facsimile: 815-968-9427

Gaston P. Loomis
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Facsimile: 302-778-7575

Arthur E. Rosenberg
Holland & Knight, LLP
195 Broadway
New York, NY 10007
Facsimile: 212-385-9010

Jonathan E. Strouse
Robert J. Labate
Matthew D. Sobolewski
Holland & Knight, LLP
131 South Dearborn Street
Chicago, IL 60603
Facsimile: 312-578-6666

Mayer Y. Silber
Office of the General Counsel
Internal Revenue Service
200 West Adams St., Suite 2300
Chicago, IL 60606
Facsimile: 312-368-8712

Daniel M. Donahue
McGreevy Williams, PC
6735 Vistagreen Way
P.O. Box 2903
Rockford, IL 61132
Facsimile: 815-639-9400

Patricia E. Rademacher
Jennifer M. Bode
Coston & Rademacher
105 W. Adams Street
Suite 1400
Chicago, IL 60603
Facsimile: 312-205-1011

Bankruptcy Administration
IKON Financial Services
1738 Bass Road
P.O. Box 13708
Macon, GA 31208
Facsimile: 478-405-4043

Alisa Mumola
Contrarian Funds, LLC
411 West Putnam Ave., Suite 225
Greenwich, CT 06830
Facsimile: 203-629-1977

Patricia Clotfelder
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
420 N. 20th St.
Birmingham, AL 35203
Facsimile: 205-322-8007

Tyler A. Moore
Barrack, Switzer, Long,
Balsley & Van Evera
6833 Stalter Drive
Rockford, IL 61108
Facsimile: 815-962-0687

Bradley J. Waller
Klein, Stoddard, et al.
2045 Aberdeen Court
Sycamore, Illinois 60178
Facsimile: 815-748-4030

Louis W. Levit
Louis W. Levit, P.C.
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
Facsimile: 847-480-7859

Brian M. Graham
SmithAmundsen LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
Facsimile: 312-894-3210

Associate Area Counsel, SB/SE
200 W. Adams Street, Suite 2300
Chicago, IL 60606
Facsimile: 312-368-8712

Fred Caruso
Development Specialists, Inc.
Three First National Plaza
70 West Madison Street, Suite 2300
Chicago, IL 60602
Facsimile: 312-263-1180

D. Patrick Mullarkey
Tax Division (DOJ)
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Via U.S. Express Mail/Return Receipt

United States Attorney
219 South Dearborn Street
Chicago, IL 60604
Via Hand Delivery

Dwyer, Virginia
Revocable Trust 1988
8540 Brittani Dr.
Fort Myers, FL 33912-7019

Heidelberg Print Finance
Attn: Print Finance
Box 198332
Bank of America
Atlanta, GA 30349

Ritter, Lawrence G. and Jennie Revocable
Living Trust
13088 Taussig Ave.
Bridgeton, MO 63044-1422

Sayre, Thomas
835 Shenandoah Shores Rd.
Front Royal, VA 22630-6516

LaPietra, Albert
45 Walnut St..
East Rochester, NY 14445-1101

Labelle, Margaret A.
388 Geranium Ave. E
St. Paul, MN 55101-3725

Lammers, James P.
P.O. Box 345
Champlain, NY 12919-0345

Dupont Printing & Publishing
c/o Bob Rivituso
P.O. Box 80030
Wilmington, DE 19880-0030

Madigan, Janet S.
1402 Williams Dr.
Wall Township, NJ 07719-4435

Doris Goebel-Noe
16416-160[th] Ave.
Rodney, MI 49342

Gomez, Ana Maria
9507 Hemlock Dr. SE
Huntsville, AL 35803-1161

Krause, James R.
3809 Highland Ave.
Skaneateles, NY 13152-9355

9846594

Blevins, Georgia K.
Windfield Village
8170 SW Vlahos Dr.
Apt. 106
Wilsonville, OR  97070-6485

LDR
12021 NE Airport Way
Portland, OR  97220-1081

Zirkle, William
d/b/a Circle Ent.
P.O. Box 222051
Chantilly, VA  20153-2051

Nicor
P.O. Box 190
Aurora, IL 60507-0190

Drake, Kenneth W.
East Broad St.
Suite 309
Hazleton, PA  18201

Gartner, Dora
485 Bunker Hill Rd.
Nassau, NY  12123-9424

Metz, Garnita
10310 Village Circle Drive
Apt. 208
Palos Park, IL  60464-3570

Metz, William
10310 Village Circle Drive
Apt. 208
Palos Park, IL  60464-3570

3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 11 CASE |
| | ) |
| TAN BOOKS & PUBLISHERS, INC. | ) CASE NO. 05 B 70657 |
| | ) |
| Debtor. | ) HON. MANUEL BARBOSA |

## COVER SHEET FOR APPLICATION FOR
## PROFESSIONAL COMPENSATION
(Appendix to Rule 5082-1)

Name of Applicant:  **Fred Caruso, Trustee for Chapter 11 Estate of Debtor ("Trustee")**

Authorized to Provide Professional Services to: **Estate**

Date of Order Authorizing Employment/Appointment: **December 20, 2006**

Period for Which Compensation is Sought:  From **November 1, 2008** through **September 16, 2009**

Amount of Compensation Sought:          **$139,275.36**

Amount of Expense Reimbursement Sought:     **$4,765.56**

This is a: ☒ Final Application

If this is not the first application filed herein by this professional, disclosure as to all prior fee applications:

| Date Filed | Period Covered | Total Requested | Total Allowed | Any Amount Ordered Withheld |
|---|---|---|---|---|
| July 16, 2007 | December 20, 2006 through June 30, 2007 LIMITED SOLELY TO AUCTION OF EQUIPMENT | $26,164.79 | $26,164.79 | $0.00 |
| November 30, 2007 | December 20, 2006 through October 31, 2007 | $162,704.68 | $151,704.68 | $0.00 |
| June 26, 2008 | November 1, 2007 through April 30, 2008 | $129,047.52 | $129,047.52 | $0.00 |

| December    2, | May    1,    2008    – | $61,698.46 | $61,698.46 | 61,698.46 |
| 2008 | October 31, 2008 | | | |

The amount of fees and expenses paid to the Applicant to date for services rendered and expenses incurred herein is $368,615.45.

Date: August 27, 2009

Applicant:

FRED CARUSO, TRUSTEE OF THE CHAPTER 11 BANKRUPTCY ESTATE OF TAN BOOKS & PUBLISHERS, INC.

By:      /s/ Michael M. Schmahl
One of His Attorneys

Richard J. Mason, P.C. (ARDC #01787659)
John F. Pollick (ARDC #03128122)
Michael M. Schmahl (ARDC #06275860)
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, Illinois  60601-1815
(312) 849-8100
(312) 920-9928 (FAX)
*Attorneys for Fred Caruso, Trustee of the Chapter 11
Bankruptcy Estate of Tan Books & Publishers, Inc.*

2

9846594

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Hon. Manuel Barbosa** |
| | ) | |
| **TAN BOOKS & PUBLISHERS, INC.,** | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | **Case No. 05 B 70657** |
| | ) | |

**FINAL APPLICATION OF TRUSTEE FOR ALLOWANCE**
**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Fred Caruso, the trustee ("Caruso" or the "Trustee") for the above-referenced Chapter 11 estate (the "Estate"), by his attorneys, McGuireWoods LLP ("McGuireWoods"), hereby submits his Final Application for Allowance of Compensation and Reimbursement of Expenses (the "Application") for the approximately ten and a half month period from November 1, 2008 through September 16, 2009 (the "Compensation Period"), and respectfully requests the entry of an order: (a) allowing and authorizing the payment of compensation (the "Compensation") in the amount of $139,275.36 and reimbursement of expenses (the "Expense Reimbursement") in the amount of $4,765.56 for services provided and expenses incurred by him as Trustee herein; and (b) finally approving all prior interim awards of his interim fees and expense reimbursements (collectively with the Compensation and the Expense Reimbursement, the "Final Compensation"). In support thereof, the Trustee respectfully states as follows:

**Background**

1.     On or about February 18, 2005, Tan Books & Publishers, Inc. (the "Debtor") filed a voluntary petition under Chapter 11 of Title 11, United States Bankruptcy Code (the "Code").

2.     On or about December 20, 2006, this Court entered an order appointing Fred Caruso as the Chapter 11 trustee herein.

3

3.     On July 16, 2007, the Trustee filed his First Interim Application for Compensation (the "First Application") **[Docket No. 499]** seeking Court approval and allowance of compensation in the amount of $26,164.79[1] for services solely related to the auction of certain equipment and other personal property that took place in May 2007.

4.     On July 25, 2007, the Court entered an Order **[Docket No. 508]** approving the First Application and awarding the Trustee interim compensation of $26,164.79.

5.     On November 30, 2007, the Trustee filed his Second Interim Application for Compensation (the "Second Application") **[Docket No. 542]** seeking Court approval and allowance of compensation in the amount of $150,000.00 and reimbursement of expenses in the amount of $12,704.68 for services provided during the period from December 26, 2006, through October 31, 2007, that were not related to the auction of certain equipment and other personal property that took place in May 2007.

6.     On December 27, 2007, the Court entered an Order **[Docket No. 556]** approving the Second Application and awarding the Trustee interim compensation of $139,000.00 and reimbursement of expenses of $12,704.68.

7.     On June 26, 2008, the Trustee filed his Third Interim Application for Compensation (the "Third Application") **[Docket No. 624]** seeking Court approval and allowance of compensation in the amount of $127,189.47 and reimbursement of expenses of $1,858.05 for services provided during the period from November 1, 2007, through April 30, 2008.

---

[1]   The equipment and personal property auction resulted in proceeds of $886,230.24, all of which was disbursed by the Trustee to various administrative and secured creditors pursuant to the Court's Order **[Docket No. 509]** entered on July 25, 2007. Based on these disbursements, the maximum amount of compensation allowable under the statutory cap was $47,561.51. However, at the time, the Trustee only requested compensation of $26,174.69 (i.e. 3% of disbursements).

4

8.    On July 16, 2008, the Court entered an Order **[Docket No. 629]** approving the Third Application and awarding the Trustee interim compensation of $127,189.47 and reimbursement of expenses of $1,858.05.

9.    On December 3, 2008, the Trustee filed his Fourth Interim Application for Compensation (the "Fourth Application") **[Docket No. 996]** seeking Court approval and allowance of compensation in the amount of $60,353.09 and reimbursement of expenses of $1,345.37 for services provided during the period from May 1, 2008 to October 31, 2008.

10.    On December 24, 2008, the Court entered an Order **[Docket No. 1003]** approving the Fourth Application and awarding the Trustee interim compensation of $60,353.09 and reimbursement of expenses of $1,345.37.

11.    The Compensation and Expense Reimbursement requested in this Application do not include the fees or expense reimbursements previously awarded to the Trustee.

### Caruso's Qualifications

12.    Caruso is a widely respected expert in the business restructuring field.  He is currently the Chief Operating Officer and Vice-President of Development Specialists, Inc., a leading provider of management and consulting services to businesses, creditors, and lenders. He graduated from the University of Wisconsin with degrees in accounting and finance in 1977 and is a Certified Public Accountant and a Certified Insolvency and Reorganization Accountant with over 24 years of experience working with and restructuring insolvent businesses and valuing assets.

13.    Caruso has served as the trustee in both chapter 7 and chapter 11 bankruptcy cases and has been the day-to-day manager for at least twelve different companies in a variety of industries, including sub-prime financial services, metal fabrication, injection molding, blow

5

molding, residential construction, real estate management, government contracting, hospitality and food services, wholesale and retail oil distribution, and computer software. Additionally, Caruso has provided consulting services to a host of debtors and creditors in unrelated matters.

### Trustee's Activities

A.    **Overview of the Debtor's Financial Situation at the Time of Trustee's Appointment.**

14.    This case has presented a number of complex challenges for the Trustee. At the time the Trustee was appointed, the Debtor had working capital of approximately $50,000 and postpetition accounts payable of approximately $150,000, following the busy Christmas shopping season, and operated as both a publisher of specialized religious literature and a printer. The printing operation was not digital and was otherwise outdated and required the Debtor to own and maintain a large amount of equipment, including a large, costly Heidelberg press and to utilize a large portion of the building owned and operated by the Debtor (the "Property"). In order to staff both of these operations, the Debtor employed a bloated labor force of over seventy people and was losing money. Finally, the Debtor was hampered by the fact that the IRS has asserted a claim in excess of $3 million secured, in part, by a tax lien on all of the Debtor's assets.

15.    The Debtor's primary assets were the Property and the Debtor's existing inventory. The Property consists of an approximately 300,000 square foot commercial building on approximately thirty-one acres of land located at 2020 Harrison Avenue in Rockford, Illinois. The Property has various environmental problems that pre-date Debtor's ownership and is located on a Superfund site. Additionally, the Property was in need of major repairs, including significant repairs to the roof. In its schedules of assets and liabilities, the Debtor claimed that its inventory of books had significant value, however, much of this inventory was old (having been

6

printed years earlier) and was not easily liquidated in bulk due to the specialized nature of the Debtor's books.

16.    The Debtor's large inventory was, in part, the result of the Debtor's antiquated practice of printing books using plates and a press, which required the Debtor to print large volumes of any single title in any single printing rather than a digital process that would have allowed the Debtor to print smaller numbers of books as needed. Additionally, the large inventory resulted in the Debtor utilizing a significant portion of the Property for storage rather than leasing the space out to third parties.

17.    Additionally, prior to the Trustee's appointment, the Debtor was involved in significant litigation with the Official Committee of Unsecured Creditors (the "Committee") and others. Among other things, the Debtor and the Committee were embroiled in extensive disputes relating to competing proposed chapter 11 plans that had been pending for nearly all of 2006. Additionally, the Debtor was involved in disputes with various other parties, including an adversary proceeding against Andrew Gardner ("Gardner"), an individual that claimed to have an exclusive right to publish one of the best selling titles in the Debtor's catalog, and state court litigation with RL Leak Trucking ("RL Leak"), an action in which the Debtor sought to collect certain amounts allegedly owed for parking on the Debtor's Property.

**B.     Trustee's Activities to Stabilize Debtor's Business Operations, Liquidate Various Assets, and Resolve Certain Disputes.**

18.    Upon his appointment, the Trustee immediately began the process of stabilizing the Debtor's finances and business operations and consulting with the Committee. Prior to the Trustee's appointment, the Debtor was primarily managed by Mr. Thomas Nelson, the Debtor's sole shareholder. Therefore, following his appointment, the Trustee and his staff were required

7

to actively manage the Debtor's business operations and financial affairs. In order to accomplish this, the Trustee and/or his representatives worked full time at the Debtor's offices from December 2006 through the early spring of 2007.

19.     Among other things, the Trustee determined that the Debtor's printing operation was antiquated, unable to compete in the current printing market without a very significant capital investment. Additionally, the Debtor's printing operation incurred significant expenses, including, among other things, a large labor force, far in excess of any benefit to the Debtor. Therefore, the Trustee, after consulting with the Committee, entered into a plan to shut down the printing operation, liquidate unnecessary equipment, and to eliminate excess overhead, including a significant down sizing of the Debtor's labor force and decreasing the Debtor's operating footprint on the Property.

20.     As part of this plan, the Trustee, among other things, reduced the Debtor's labor force by approximately two-thirds in a stepped process conducted over a period of time, and, with the Court's approval, conducted a successful auction (the "Auction") in May 2007, of a large amount of unneeded equipment and other personal property. Through the Auction, the Trustee liquidated substantially all of the unnecessary equipment and other personal property and obtained gross proceeds of over $886,000, which proceeds were used to pay a number of claims secured by specific pieces of equipment, part of the debt owed to the IRS (the "IRS Auction Payment"), and the costs of the Auction. To implement this course of action, the Trustee needed to consult with attorneys with expertise in the areas of labor and employment and employee benefits in addition to his normal bankruptcy counsel.

21.     The Trustee also immediately began the process of marketing and preparing the Property for sale. Shortly after his appointment, the Trustee and his staff started discussions with

various parties that were potentially interested in purchasing the Property. Through these discussions, the Trustee identified a stalking horse bidder with an opening bid of approximately $1.3 million for the Property. Subsequently, the Trustee, with the Court's approval, entered into a contract, subject to certain contingencies, with another party, Rockford Industrial Holdings, LLC, following an auction (the "Property Auction") for approximately $1.5 million. This contract was subject to, among other things, certain contingencies related to the environmental problems with the Property, which is located on a Superfund site. Specifically, the Trustee was required to obtain the assignment to Rockford Industrial Holdings, LLC, of certain covenants not to sue previously issued to the Debtor by the US EPA and the Illinois EPA with respect to the Property.

22.    The Trustee and his staff, working in conjunction with his attorneys with expertise in real estate law and environmental law, satisfied all of those contingencies and closed the sale of the Property for approximately $1.5 million.

23.    The Trustee also worked with the Committee to negotiate a resolution of the Committee's adversary proceeding against the Debtor's principal and former officer, Thomas A. Nelson, and certain purported entities owned and/or controlled by him captioned *Official Committee of Unsecured Creditors v. Thomas A. Nelson, et al.* (Adv. No. 06 A 96102) (the "Committee Adversary"). As contemplated pursuant to a partial settlement of the Committee Adversary previously approved by the Court, the Trustee entered into a sale agreement with the California Community Foundation, a non-profit, charitable organization, and closed the sale (the "CCF Book Sale") of a large number of books to the California Community Foundation for approximately $2 million.

9

24.     Additionally, the Trustee negotiated a resolution of the IRS' asserted claims, including but not limited to a purported secured claim exceeding $3.83 million and a purported priority claim exceeding $25,000. Pursuant to the terms of the settlement, as approved by the Court, the IRS agreed to release all of its claims against the Debtor, including the IRS tax lien on all of the Debtor's assets, for a total payment of $2.4 million, comprised of the IRS Auction Payment and portions of the proceeds from the CCF Book Sale and the Property Auction, coupled with a subordinated unsecured claim for non-pecuniary loss penalties of approximately $1 million that will be payable only after all other general unsecured claims (that are not claims described in 11 U.S.C. § 726(a)(4)) have been paid in full. As a result of this settlement, the Debtor's estate was freed of the IRS tax lien and the Trustee was able to bring cash in excess of $1 million into the estate.

**C.      Sale of Substantially All of the Debtor's Assets and the Committee Chapter 11 Plan.**

25.     The Trustee cooperated with the Committee and spent a significant amount of time consulting with the Committee regarding his efforts to stabilize and rehabilitate the Debtor's business, a potential sale of the Debtor's operations, and the potential terms for a chapter 11 plan. During these discussions, the Trustee and his staff actively researched and evaluated various of the Committee's plan proposals, including proposals that raised a number of complicated tax and other issues. In order to evaluate the Committee's proposals, the Trustee consulted with various tax attorneys in addition to his normal bankruptcy counsel.

26.     During discussions with the Committee regarding a potential chapter 11 plan, the Trustee was approached by Good Will Publishers, Inc., and its affiliate Saint Benedict Press, Inc. (collectively, "Good Will"), a third party publisher, regarding the potential purchase of substantially all of the Debtor's assets and business operations. As an early step in the

10

discussions with Good Will, the Trustee negotiated and entered into a non-disclosure agreement allowing Good Will to conduct a due diligence review of Debtor's records and assets.

27.    The Trustee later negotiated and entered into an asset purchase agreement (including all amendments, the "APA") pursuant to which the Trustee agreed, subject to Court approval, to sell substantially all of the Debtor's assets to Good Will, including the assignment of certain contracts and leases, for a cash payment of approximately $1 million, subject to certain adjustments, and annual payments ("Earn Out Payments") for a ten-year period (following closing of such a sale) equal to 5% of the gross annual revenues earned by Good Will, or any of their affiliates, from the publication of any of the titles in the Debtor's catalog as listed in the APA.

28.    The Committee preferred a reorganization of the Debtor under a chapter 11 plan in this case, rather than a sale to Good Will under the APA. The Trustee held substantial discussions with the Committee regarding the terms of the plan (the "Committee Plan") **[Docket No. 655]**. Ultimately, the Committee proposed offering creditors the option to either: (i) sell the Debtor's operating assets pursuant to the APA and receive distributions of the sale proceeds on behalf of their allowed claims; or (ii) reorganize the Debtor's business and receive equity interests in a new company that would receive the Debtor's assets on behalf of their allowed claims.

29.    In connection with the Committee Plan, the Trustee offered extensive comments to the Committee regarding the contents of the Committee's disclosure statement and other documents the Committee submitted in support of the Committee Plan, including but not limited to a liquidating trust agreement. In the course of evaluating the various drafts of the Committee Plan and disclosure statement **[Docket No. 662]**, the Trustee consulted with his bankruptcy

11

9846594

counsel as well as other attorneys specializing in tax and securities law.  The Trustee also reviewed the voting process and participated in the confirmation hearing on the Committee Plan.

30.    Due to certain impending deadlines related to obtaining Court approval of the sale to Good Will in the APA (and before the Committee Plan had been finalized or proposed), the Trustee also filed an independent motion (the "Sale Motion") **[Docket No. 651]** seeking approval of the sale to Good Will pursuant to the APA in order to preserve the sale as an option for the estate either pursuant to the Committee Plan or the Sale Motion.

31.    Ultimately, the Committee withdrew the Committee Plan and the Trustee successfully prosecuted the Sale Motion at an evidentiary hearing at which the Trustee put on witnesses and presented evidence in support of the Sale Motion.  The sale to Good Will closed in early November 2008.

32.    Prior to the sale to Good Will, the Trustee also addressed several issues related to the Debtor's ongoing business operations.  Among other things, the Trustee reviewed various licensing issues, attempted to negotiate licensing agreements in the ordinary course of the Debtor's business, and addressed certain employment and benefits issues.  In addressing these issues, the Trustee has needed to consult with attorneys specializing in copyright and intellectual property rights, labor and employment, and employee benefits in addition to his bankruptcy counsel.

33.    Upon the Court's approval of the APA and closing of the sale to Good Will, the Trustee and his counsel attended to many important details related to the closing including review of the closing documents and payout calculations and figures, review of certain executory contracts assumed by Good Will and cure issues related thereto, and certain issues related to real property leases.

9846594

**D.    The Trustee's Liquidating Plan, Its Confirmation and Post-Confirmation Activities.**

34.    Subsequent to the Court's approval of APA and during the Compensation Period, the Trustee and his counsel engaged in significant efforts to formulate, draft and submit a Chapter 11 Liquidating Plan (the "Liquidating Plan") for the Court's approval. As part of these efforts, the Trustee and his counsel investigated the merits of a converting the case to one under Chapter 7 of the Code versus filing a Chapter 11 Liquidating Plan. After consultation, the Trustee and his counsel ultimately determined that a Liquidating Plan was preferable for the Debtor's situation. The Trustee's counsel, with the Trustee's assistance and review, then spent a considerable amount of time drafting the Trustee's Chapter 11 Plan, the Trustee's Revised Chapter 11 Plan of Liquidation, and the accompanying Disclosure Statement, and as part of such drafting addressed the structure of the plan as it relates to various classes of creditors claims, considered the tax implications and administration issues related to the structure of the plan with the consultation of tax attorneys and accountants, and devised the distribution scheme of the plan based on all complex considerations facing the Plan. Moreover, the Trustee and his counsel considered and addressed issues relating to the Liquidating Trust contemplated by the Liquidating Plan and drafted and distributed notice of the Liquidating Plan and Disclosure Statement and voting ballots associated therewith.

35.    The Trustee submitted the Plan to the Court and solicited creditors' votes in favor of the Plan. Following an overwhelming creditor vote in favor of the Plan, the Committee objected to its confirmation, asserting many of the same or similar objections that the Committee raised in conjunction with the sale to Good Will pursuant to the APA. Therefore, the Trustee and his counsel spent a significant amount of time preparing for and conducting a contested hearing on the confirmation of the Plan (the "Confirmation Hearing"), including the presentation

13

of significant oral testimony and documentary evidence in support of Plan confirmation. At the contested Confirmation Hearing, the Court overruled the Committee's objections and confirmed the Plan.

36.    Since the Confirmation Hearing, among other things, the Trustee and his counsel have analyzed the approximately 900 claims asserted against the Estate. Many of the proofs of claim filed by creditors did not include sufficient information to justify the amount asserted in the proofs of claim. Additionally, several creditors asserted claims that had already been paid or asserted a priority to which they are not entitled under the Bankruptcy Code. Nonetheless, given the fact that the majority of the claims asserted in this bankruptcy were submitted by individuals (many of whom are senior citizens), the Trustee made a substantial effort to verify the amounts asserted by the creditors against the Debtor's books and records. In an effort to keep expenses down, the Trustee performed much of this analysis with his staff.

37.    Additionally, during the Compensation Period, the Trustee and his counsel worked with the Trustee's tax accountants and the Debtor's bookkeeper to address various tax issues in conjunction with the Liquidating Trust to be established pursuant to the Plan and the preparation of the Debtor's final tax returns. Due to the nature of certain unique tax issues principally relating to the remaining amounts due under the APA and the nature of the Liquidation Trust, as well as a need to for the Debtor's bookkeeper to correct and complete certain entries in the Debtor's books and records, the Trustee and his counsel have spent a significant amount of time addressing tax related concerns.

38.    During the Compensation Period, the Trustee also discovered two insurance policies on the life of Thomas Nelson, the sole equity holder of the Debtor, that have a cash surrender value but were not listed in the Debtor's schedule of assets. The Debtor may have an

14

interest in these life insurance policies. The Trustee and his counsel are currently reviewing these issues and will pursue any action that is necessary or appropriate.

39.     Finally, the Trustee and his counsel have addressed and continue to respond to numerous inquiries from creditors throughout the Compensation Period, particularly relating to the Plan confirmation process and issues related to claims.

40.     As a result of the Trustee's management and actions, the Debtor's estate currently has cash on hand of $2,437,636.98 (the "Available Funds").

41.     Pursuant to the Liquidating Plan, the Trustee expects to disburse all of the Available Funds in accordance with its provisions on or before October 31, 2009. See Sec. 4.1 of the Liquidating Plan [Docket No. 1007].

42.     In addition, pursuant to the Liquidating Plan, the Trustee will transfer to the Liquidating Trust all rights to receive Earn Out Payments under the APA. See Sec. 4.2 and 5.1 of the Liquidating Plan [Docket No. 1007]. According to the Liquidation Analysis attached to the Disclosure Statement for the Liquidating Plan [Docket No. 1008], the estimated present value of the Earn Out Payments is between a high of $1,360,000 and a low of $830,000. This transfer is also expected to occur on or before October 31, 2009.

43.     During the Compensation Period, the Trustee and his staff have expended at least 250.40 hours in connection with this case. A copy of the time records describing the services provided by the Trustee and his staff are attached hereto as Exhibit A. The services provided by the Trustee and his staff were all necessary for the proper administration of the estate and operation and restructuring of the Debtor's continuing business and financial affairs.

15

## Statutory Support for Trustee Compensation

44.     Pursuant to 11 U.S.C. §330, the Court may award a trustee in bankruptcy "reasonable compensation for actual, necessary services rendered by the trustee ..." and "reimbursement for actual, necessary expenses."

45.     Pursuant to 11 U.S.C. §326(a), the trustee's compensation is limited by the following formula:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

46.     Through the date hereof, the Trustee has disbursed not less than $12,091,786.52, and accumulated Available Cash of $2,437,636.98.

47.     The Trustee has previously submitted detailed, monthly reports to the Court, the United States Trustee, and IRS describing these disbursements in the Debtor's Monthly Summary of Cash Receipts and Disbursements **[Docket Nos. 472, 473, 474, 477, 482, 487, 514, 515, 519, 525, 532, 545, 572, 587, 603, 617, 619, 628, 646, 672, 994, 995, 998, 1010, 1011, 1226, 1227, 1234 and 1235]** (collectively, the "Monthly Reports"). Although the Monthly Reports contain a great deal more detail, the monthly disbursements since the Trustee's appointment are summarized as follows:

| Month | Disbursements |
|---|---|
| December 20 – 31, 2006 | $245,788.73 |
| January 1 – 31, 2007 | $494,418.25 |

16

| | |
|---|---|
| February 1 – 28, 2007 | $383,241.44 |
| March 1 – 31, 2007 | $375,537.47 |
| April 1 – 30, 2007 | $487,119.08 |
| May 1 – 31, 2007 | $321,787.77 |
| June 1 – 30, 2007 | $356,833.68 |
| July 1 – 31, 2007 | $300,570.36 |
| August 1 – 31, 2007 | $1,100,923.04 |
| September 1 – 30, 2007 | $191,872.88 |
| October 1 – 31, 2007 | $323,849.52 |
| November 1 – 30, 2007 | $241,828.43 |
| December 1 – 31, 2007 | $612,259.61 |
| January 1 - 31, 2008 | $2,505,784.51 |
| February 1 – 28, 2008 | $430,737.43 |
| March 1 – 31, 2008 | $353,201.11 |
| April 1 – 30, 2008 | $244,388.73 |
| May 1 – 31, 2008 | $219,729.10 |
| June 1 – 30, 2008 | $198,298.25 |
| July 1 – 31, 2008 | $585,735.64 |
| August 1 – 31, 2008 | $572,804.66 |
| September 1 – 30, 2008 | $224,432.40 |
| October 1 – 31, 2008 | $210,769.43 |
| November 1 – 30, 2008 | $338,000.00 |

17

9846594

| December 1 – 31, 2008 | $419,000.00 |
| January 1- 31, 2009 | $180,000.00 |
| February 1 – 28, 2009 | $5,000.00 |
| March 1 – 31, 2009 | $163,000.00 |
| April 1 – 30, 2009 | $0 |
| May 1 – 31, 2009 | $4,875.00 |
| **Total Monthly Report Disbursements** | **$12,091,786.52** |

48.    The disbursements described in the Monthly Reports have been made to the Debtor's employees, suppliers, vendors, taxing authorities, various professionals, and other creditors.

49.    In addition to the disbursements described in the Monthly Reports, the Trustee expects, by the end of October, 2009, to fully disburse the Available Cash and transfer to the Liquidating Trustee all rights to the Earn Out Payments. Adding to the disbursements described in the Monthly Reports the imminent disbursement of $2,437,636.98 in Available Cash and $1,095,000 in Earn Out Payments (the average between the high and low estimates of their present value) results in a total disbursement figure of $15,624,423.50.

50.    Under the formula set forth in 11 U.S.C. §326(a), the Trustee is entitled to request an amount up to $139,275.35 as compensation for services performed calculated as follows:

25% of 1st $5,000……………………………………$    1,250.00

10% of $45,000 from $5,000 to $50,000………………$    4,500.00

5% of $950,000 from $50,000 to $1,000,000……………$    47,500.00

3% of amount in excess of $1,000,000 ($14,624,423.50)  $  438,732.71

18

9846594

SUB TOTAL....................................................$ <u>491,982.71</u>

Less First Interim Compensation Award....................($  26,164.79)

Less Second Interim Compensation Award.................($  139,000.00)

Less Third Interim Compensation Award....................($  127,189.47)

<u>Less Fourth Interim Compensation Award.................  ($   60,353.09)</u>

**TOTAL**.............................................................**$  139,275.35**

51.    In connection with his Second, Third and Fourth Applications, the Trustee

attached thereto an Exhibit A which, like <u>Exhibit A</u> attached hereto, described the services of the

Trustee and his staff during the compensation period in question, the hours expended by each of

them and the value of their time.  The total value of the services rendered by the Trustee and his

staff in this case, as calculated in the Exhibits A attached to the Second, Third, Fourth and this

final Application, is $643,991.50.  This value is more than $150,000 greater than the maximum

compensation allowed under 11 U.S.C. §326(a) and sought by the Trustee herein.

52.    Based on the foregoing, the Trustee asks that the Court award him Compensation

for the Compensation Period of $139,275.35 and authorize payment of that amount to him at this

time.

53.    Additionally, during the Compensation Period, the Trustee incurred expenses in

the amount of $4,765.56 in this case.  These expenses include:

a.    <u>Travel Expenses</u>:  In providing his services in this case during the

Compensation Period, the Trustee and/or his staff has incurred travel expenses, including

expenses related to parking, tolls, gas, and taxi service, for travel to and from the

Debtor's facility and the Court and to attend various meetings with the representatives of

the Committee and other parties in interest in the amount of $1,894.76.

19

9846594

b.  Lodging: In providing his services in this case during the Compensation Period, the Trustee and/or his staff has incurred lodging expenses in connection with the Trustee's business in the amount of $1,941.74.

c.  Meals: In providing his services in this case during the Compensation Period, the Trustee and/or his staff has incurred expenses for meals in the amount of $558.39.

d.  Long Distance Telephone Calls: The Trustee incurred long distance telephone charges of $79.93 during the Compensation Period.

e.  Photocopies: During the Compensation Period, the Trustee incurred photocopy charges of $92.20 for internal copies, which the Trustee has calculated at $0.10 per copy.

f.  Postage: During the Compensation Period, the Trustee incurred charges for postage in the amount of $19.90.

g.  Supplies: During the Compensation Period, the Trustee incurred charges for supplies (storage boxes) in the amount of $121.17.

h.  Overnight Delivery: During the Compensation Period, the Trustee incurred charges for the use of overnight delivery services such as Federal Express in the amount of $57.47.

54.  All of these expenses were reasonable and necessary under the circumstances. The Trustee requests that the Court award him an Expense Reimbursement of $4,765.56 and authorize payment of that amount to him at this time.

9846594

**Final Application**

55.    The Trustee has filled four previous applications for interim compensation and
expense reimbursement. The following chart summarizes: (i) the date each application was filed;
(ii) the period of services covered; (iii) the compensation and expenses requested; (iv) the date
and amount of allowance; and (v) the dates the allowances were paid:

| | Date Filed | Period Covered | Total Requested | Total Allowed | Date Allowed and Paid |
|---|---|---|---|---|---|
| First Application | July 16, 2007 | December 20, 2006-June 13, 2007 (Auction Sale Only) | $26,164.79 | $26,164.79 [Docket No. 508] | July 25, 2007 |
| Second Application | November 30, 2007 | December 26, 2006-October 31, 2007 | $162,704.68 | $151,704.68 [Docket No. 556] | December 27, 2007 |
| Third Application | June 26, 2008 | November 1, 2007-April 30, 2008 | $129,047.52 | $129,047.52 [Docket No. 629] | July 16, 2008 |
| Fourth Application | December 3, 2008 | May 1, 2008–October 31, 2008 | $61,698.46 | $61,698.46 [Docket No. 1003] | December 24, 2008 |

56.    Accordingly, the Trustee requests that the Court grant as final compensation and
expense reimbursement the following:

a.    $26,164.79 in fees and expenses for the First Application (as previously
allowed on an interim basis on July 25, 2007);

21

9846594

b.    $151,704.68 in fees and expenses for the Second Application (as previously allowed on an interim basis on December 27, 2007);

c.    $129,047.52 in fees and expenses for the Third Application (as previously allowed on an interim basis on July 16, 2008);

d.    $61,698.46 in fees and expenses for the Fourth Application (as previously allowed on an interim basis on December 24, 2008); and

e.    $144,040.92 in Compensation and Expense Reimbursement for the Compensation Period.

57.    The Trustee also requests that the Trustee be authorized and directed to pay himself the total allowances, less the sums previously paid, leaving an unpaid balance of $, calculated as follows:

First Application...................$  26,164.79

Second Application................$ 151,704.68

Third Application..................$ 129,047.52

Fourth Application............ ...$   61,698.46

Final Compensation Period.......$  144,040.92

Total...............................$  512,656.37

Less:  Previous Payments...... ($   26,164.79) (July 25, 2007)

($ 151,704.68) (December 27, 2007)

($ 129,047.52) (July 16, 2009)

($  61,698.46) (December 24, 2008)

Total Additional Payment Owed:  **$ 144,040.92.**

9846594

**Notice**

58.    Section 330 of the Bankruptcy Code requires notice and a hearing before any action on this Application.  The Trustee has mailed a copy of the notice (the "Notice") of this Application to (i) the creditors on the list of the twenty largest creditors of the Debtor, (ii) the United States Trustee, and (iii) those parties who have requested receipt of pleadings in these cases pursuant to Federal Rule of Bankruptcy Procedure 2002.  A copy of the Notice is attached hereto as Exhibit B.  Since the foregoing parties have been the most active in these cases, the Trustee requests that the Court determine that such notice is adequate and appropriate under the circumstances.  Additionally, a complete copy of this Application with all supporting exhibits has been served electronically on all parties receiving electronic notices from the Court pursuant to the Court's electronic filing system (a/k/a ECF).  The Trustee will make copies of this Application and all supporting documentation available to any party in interest that submits a written request to the Trustee's counsel, Michael M. Schmahl, via regular mail at McGuireWoods LLP, 77 W. Wacker Drive, Suite 4100, Chicago, IL 60601; via facsimile at (312) 920-6598; or via electronic mail at mschmahl@mcguirewoods.com.

WHEREFORE, the Trustee prays this Court enter an order: (i) rendering final the interim compensation and expense reimbursement previously allowed on the Trustee's First Application, Second Application, Third Application, and Fourth Application; (ii) allowing the Trustee's Compensation for services rendered during the Compensation Period in the amount of $139,275.36; (iii) allowing reimbursement of expenses to the Trustee relating to the Compensation Period in the amount of $4,765.92; (iv) rendering as Final the Compensation and Expense Reimbursement for the Compensation Period and directing the Trustee to disburse such compensation and reimbursement; (v) approving the form and manner of notice provided to

23

creditors and other parties in interest; and (vi) granting such further relief as the Court deems just

or appropriate.

Dated:  August 27, 2009

Respectfully submitted,

FRED CARUSO, TRUSTEE

By: /s/ Michael M. Schmahl
        One of his Attorneys

Richard J. Mason, P.C. (ARDC #01787659)
John F. Pollick (ARDC #03128122)
Michael M. Schmahl (ARDC #06275860)
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, Illinois  60601-1815
(312) 849-8100
(312) 920-9928 (FAX)
Attorneys for Fred Caruso, Trustee for the Chapter 11
Bankruptcy Estate of Tan Books & Publishers, Inc.

24

9846594