# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Hon. Manuel Barbosa |
| | ) | |
| TAN BOOKS & PUBLISHERS, INC. | ) | Case No. 05 B 70657 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

## NOTICE OF MOTION

TO:    PERSONS LISTED ON THE ATTACHED SERVICE LIST

PLEASE TAKE NOTICE THAT on **Wednesday, September 16, 2009**, at the hour of **10:30 a.m.**, the undersigned shall appear before the Honorable Manuel Barbosa, United States Bankruptcy Judge, 211 South Court Street, Courtroom 115, Rockford, Illinois, and shall then and there present the **Final Application Of McGuireWoods LLP For Allowance Of Compensation And Reimbursement Of Expenses As Counsel For Trustee**, a copy of which is attached hereto and hereby served upon you.

Fred Caruso, Trustee of the Chapter 11 Bankruptcy Estate of Tan Books & Publishers, Inc.

By:/s/    Michael M. Schmahl
One of his Attorneys

Richard J. Mason, P.C. (ARDC #01787659)
John F. Pollick (ARDC # 03128122)
Michael M. Schmahl (ARDC #06275860)
Paul J. Catanese (ARDC #0629250)
McGuireWoods LLP
77 West Wacker Drive
Suite # 4100
Chicago, Illinois  60601-1815
(312) 849-8100

9844096 v.2

## CERTIFICATE OF SERVICE

I, Michael M. Schmahl, an attorney, hereby certify that the foregoing **Notice of Motion**, together with a true copy of **Final Application Of McGuireWoods LLP For Allowance Of Compensation And Reimbursement Of Expenses As Counsel For Trustee**, was duly served upon each of the parties on the attached Service List via first-class mail, proper postage pre-paid, this day of 27th day of August, 2009.

/s/   Michael M. Schmahl

Richard J. Mason, P.C. (ARDC #01787659)
John F. Pollick (ARDC # 03128122)
Michael M. Schmahl (ARDC #06275860)
Paul J. Catanese (ARDC #06292530)
McGuireWoods LLP
77 West Wacker Drive
Suite # 4100
Chicago, Illinois  60601-1815
(312) 849-8100

2

## SERVICE LIST

Ronald R. Peterson
Jenner & Block LLP
One IBM Plaza, 38th Floor
Chicago, IL 60611
Facsimile:  312-840-7381

George Hampilos
Schirger, Monteleone & Hampilos, PC
308 West State Street, Suite 210
Rockford, IL 61101
Facsimile:  815-962-6250

Sheree Dandurand
Office of the United States Trustee
District Office
780 Regent Street, Suite 304
Madison, Wisconsin 53715
Facsimile: 608-264-5182

David H. Carter
One Court Place, Suite 401
Rockford, IL 61101
Facsimile: 815-968-9427

Gaston P. Loomis
Reed Smith LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Facsimile: 302-778-7575

Arthur E. Rosenberg
Holland & Knight, LLP
195 Broadway
New York, NY 10007
Facsimile:  212-385-9010

Jonathan E. Strouse
Robert J. Labate
Matthew D. Sobolewski
Holland & Knight, LLP
131 South Dearborn Street
Chicago, IL 60603
Facsimile: 312-578-6666

Mayer Y. Silber
Office of the General Counsel
Internal Revenue Service
200 West Adams St., Suite 2300
Chicago, IL 60606
Facsimile: 312-368-8712

Daniel M. Donahue
McGreevy Williams, PC
6735 Vistagreen Way
P.O. Box 2903
Rockford, IL 61132
Facsimile: 815-639-9400

Patricia E. Rademacher
Jennifer M. Bode
Coston & Rademacher
105 W. Adams Street
Suite 1400
Chicago, IL  60603
Facsimile: 312-205-1011

Bankruptcy Administration
IKON Financial Services
1738 Bass Road
P.O. Box 13708
Macon, GA 31208
Facsimile: 478-405-4043

Alisa Mumola
Contrarian Funds, LLC
411 West Putnam Ave., Suite 225
Greenwich, CT 06830
Facsimile: 203-629-1977

Patricia Clotfelder
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
420 N. 20th St.
Birmingham, AL  35203
Facsimile: 205-322-8007

Tyler A. Moore
Barrack, Switzer, Long,
Balsley & Van Evera
6833 Stalter Drive
Rockford, IL 61108
Facsimile: 815-962-0687

Bradley J. Waller
Klein, Stoddard, et al.
2045 Aberdeen Court
Sycamore, Illinois 60178
Facsimile: 815-748-4030

Louis W. Levit
Louis W. Levit, P.C.
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
Facsimile: 847-480-7859

Brian M. Graham
SmithAmundsen LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
Facsimile: 312-894-3210

Associate Area Counsel, SB/SE
200 W. Adams Street, Suite 2300
Chicago, IL 60606
Facsimile: 312-368-8712

Fred Caruso
Development Specialists, Inc.
Three First National Plaza
70 West Madison Street, Suite 2300
Chicago, IL 60602
Facsimile: 312-263-1180

D. Patrick Mullarkey
Tax Division (DOJ)
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Via U.S. Express Mail/Return Receipt

United States Attorney
219 South Dearborn Street
Chicago, IL 60604
Via Hand Delivery

Dwyer, Virginia
Revocable Trust 1988
8540 Brittani Dr.
Fort Myers, FL 33912-7019

Heidelberg Print Finance
Attn: Print Finance
Box 198332
Bank of America
Atlanta, GA 30349

Ritter, Lawrence G. and Jennie Revocable
Living Trust
13088 Taussig Ave.
Bridgeton, MO 63044-1422

Sayre, Thomas
835 Shenandoah Shores Rd.
Front Royal, VA 22630-6516

LaPietra, Albert
45 Walnut St..
East Rochester, NY 14445-1101

Labelle, Margaret A.
388 Geranium Ave. E
St. Paul, MN 55101-3725

Lammers, James P.
P.O. Box 345
Champlain, NY 12919-0345

Dupont Printing & Publishing
c/o Bob Rivituso
P.O. Box 80030
Wilmington, DE 19880-0030

Madigan, Janet S.
1402 Williams Dr.
Wall Township, NJ 07719-4435

Doris Goebel-Noe
16416-160th Ave.
Rodney, MI 49342

Gomez, Ana Maria
9507 Hemlock Dr. SE
Huntsville, AL 35803-1161

2

Krause, James R.
3809 Highland Ave.
Skaneateles, NY  13152-9355

Blevins, Georgia K.
Windfield Village
8170 SW Vlahos Dr.
Apt. 106
Wilsonville, OR  97070-6485

LDR
12021 NE Airport Way
Portland, OR  97220-1081

Zirkle, William
d/b/a Circle Ent.
P.O. Box 222051
Chantilly, VA  20153-2051

Nicor
P.O. Box 190
Aurora, IL 60507-0190

Drake, Kenneth W.
East Broad St.
Suite 309
Hazleton, PA  18201

Gartner, Dora
485 Bunker Hill Rd.
Nassau, NY  12123-9424

Metz, Garnita
10310 Village Circle Drive
Apt. 208
Palos Park, IL  60464-3570

Metz, William
10310 Village Circle Drive
Apt. 208
Palos Park, IL  60464-3570

3

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| **IN RE:** | ) **CHAPTER 11 CASE** |
| | ) |
| **TAN BOOKS & PUBLISHERS, INC.** | ) **CASE NO. 05 B 70657** |
| | ) |
| **Debtor.** | ) **HON. MANUEL BARBOSA** |

**COVER SHEET FOR FINAL APPLICATION FOR**
**PROFESSIONAL COMPENSATION**
(Appendix to Rule 5082-1)

Name of Applicant:  **McGuireWoods LLP**

Authorized to Provide Professional Services to: **Trustee**

Date of Order Authorizing Employment: **January 3, 2007 (*Nunc Pro Tunc* to December 18, 2006)**

Period for Which Compensation is Sought:  **November 1, 2008 through September 16, 2009**

Amount of Fees Sought:     **$286,150.50 (includes an estimated amount from and including August 27, 2009 through September 16, 2009)**

Amount of Expense Reimbursement Sought:      **$19,268.23**

This is a: ☒ Final Application

If this is not the first application filed herein by this professional, disclosure as to all prior fee applications:

| Date Filed | Period Covered | Total Requested | Total Allowed |
|---|---|---|---|
| July 16, 2007 | December 18, 2006- June 13, 2007 | $38,043.57 | $38,043.57 |
| November 30, 2007 | December 18, 2006- October 31, 2007[1] | $280,498.38 | $275,648.38 |
| June 24, 2008 | November 1, 2007- April 30, 2008 | $215,830.81 | $209,830.81 |

a. ─────────────────

[1]    McGuireWoods LLP's First Interim Application did not relate to fees incurred during a specified time period. Rather, the First Interim Application sought approval and payment of fees and expenses solely incurred with respect to auction of certain equipment and other personal property that took place in May 2007.

| December 3, 2008 | May 1, 2008–October 31, 2008 | $239,626.06 | $239,626.06 |
|---|---|---|---|

The amount of fees and expenses paid to the Applicant to date for services rendered and expenses incurred herein is $763,148.82

Date: August 27, 2009

Applicant:    MCGUIREWOODS LLP

By:    /s/ Michael M. Schmahl
        Michael M. Schmahl

Richard J. Mason, P.C. (ARDC #01787659)
John F. Pollick (ARDC #03128122)
Michael M. Schmahl (ARDC #06275860)
Paul J. Catanese (ARDC #06292530)
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, Illinois  60601-1815
(312) 849-8100
(312) 920-9928 (FAX)
*Attorneys for Fred Caruso, Trustee of the Chapter 11*
*Bankruptcy Estate of Tan Books & Publishers, Inc.*

2

9844096 v.2

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Hon. Manuel Barbosa** |
| | ) | |
| **TAN BOOKS & PUBLISHERS, INC.,** | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | **Case No. 05 B 70657** |
| | ) | |

### FINAL APPLICATION OF MCGUIREWOODS LLP FOR
### ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF
### EXPENSES AS COUNSEL FOR TRUSTEE

McGuireWoods LLP ("McGuireWoods"), counsel for Fred Caruso, not individually, but solely as the trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Tan Books & Publishers, Inc. (the "Debtor"), hereby submits its Final Application for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Trustee (the "Application") for the approximately ten and a half month period from November 1, 2008 through September 16, 2009 (the "Compensation Period"), and respectfully requests the entry of an order: (a) allowing and authorizing the payment of compensation (the "Compensation") in the amount of $286,150.50 and reimbursement of expenses (the "Expense Reimbursement") in the amount of $19,268.23 for services provided and expenses incurred by McGuireWoods as counsel to the Trustee; and (b) finally approving all prior interim awards of McGuireWoods' interim fees and expense reimbursements (collectively with the Compensation and the Expense Reimbursement, the "Final Compensation"). In support thereof, McGuireWoods respectfully states as follows:

### Jurisdiction and Venue

1.      This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.

3.     Venue of this case and this Application is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4.     On February 18, 2005, the Debtor filed a voluntary petition under Chapter 11 of Title 11, United States Bankruptcy Code.

5.     On December 20, 2006, this Court entered an order **[Docket No. 430]** appointing Fred Caruso as the Chapter 11 Trustee herein.

6.     On January 3, 2007, the Court entered an order **[Docket No. 441]** authorizing the Trustee to retain McGuireWoods as his counsel in this case *nunc pro tunc* to December 18, 2006.

7.     On July 25, 2007, the Court entered an Order **[Docket No. 505]** approving and authorizing the trustee to disburse to McGuireWoods compensation of $37,925.00 and reimbursement of expenses in the amount of $118.57 for services provided to the Trustee with respect to the auction sale of certain equipment and other personal property that took place in May 2007.

8.     On December 27, 2007, the Court entered an Order **[Docket No. 557]** approving McGuireWoods compensation in the amount of $270,426.50 and reimbursement of expenses in the amount of $5,221.88 for services provided to the Trustee during the period from December 18, 2006, through October 31, 2007.  Additionally, the Order authorized the Trustee to disburse to McGuireWoods a total of $140,435.13, comprised of half of the allowed compensation and all of the expense reimbursement.  The disbursement of the balance of McGuireWoods' allowed compensation was reserved for a further order of the Court.

2

9.    On February 27, 2008, the Court entered an Order **[Docket No. 583]** authorizing the Trustee to disburse the balance of the allowed compensation to McGuireWoods in the amount of $135,213.25.

10.    On July 16, 2008, the Court entered an Order **[Docket No. 630]** approving McGuireWoods compensation of $206,685.50 and reimbursement of expenses in the amount of $3,145.31 for services provided to the Trustee. Additionally, the Order authorized the Trustee to disburse to McGuireWoods a total of $209,830.81.

11.    On December 24, 2008, the Court entered an Order **[Docket No. 1004]** approving McGuireWoods compensation of $235,983.50 and reimbursement of expenses in the amount of $3,643.56 for services provided to the Trustee. Additionally, the Order authorized the Trustee to disburse to McGuireWoods a total of $239,626.06. The Order preserved the Committee's right to object to McGuireWoods's rates.

12.    On March 2, 2009, the Trustee filed his Revised Chapter 11 Plan of Liquidation **[Docket No. 1007]** (the "Plan").

13.    On May 28, 2009, the Court entered an Order **[Docket No. 1231]** confirming the Plan following a vote of the creditors and a contested, evidentiary hearing.

### Relief Requested

14.    Through this Application, McGuireWoods now seeks the entry of an order, pursuant to section 330 of the Bankruptcy Code, approving and authorizing payment of the Compensation in the amount of $286,150.50 and the Expense Reimbursement of $19,268.23 incurred representing the Trustee during the ten and a half month Compensation Period and finally approving the Final Compensation. A detailed abstract containing specific summaries of

3

all of the services provided by McGuireWoods, including fees charged and all expenses incurred, during the Compensation Period is attached hereto as Exhibit A.

15.    Because this Application has to be filed 20 days prior to the hearing on this Application, and as more specifically discussed in Paragraph 41 below, McGuireWoods has included in the Compensation an amount of estimated compensation (the "Stub Estimate") for any services provided to the Trustee during the period between and including August 27, 2009, and September 16, 2009 (the "Stub Period") of $15,000.  McGuireWoods intends to file a supplement (the "Stub Period Supplement") closer to the hearing on this Application detailing any services provided during the Stub Period and will make any necessary adjustments based on the Stub Period Supplement.

### Trustee's Activities

16.    This case has presented a number of complex challenges for the Trustee.  At the time the Trustee was appointed, the Debtor had working capital of approximately $50,000 and postpetition accounts payable of approximately $150,000 following the busy Christmas shopping season, and operated as both a publisher of specialized religious literature and a printer.  The printing operation was not digital and was otherwise outdated and required the Debtor to own and maintain a large amount of equipment, including a large, costly Heidelberg press, and to utilize a large portion of the building owned and operated by the Debtor (the "Property").  In order to staff both of these operations, the Debtor employed a bloated labor force of approximately seventy people and was losing money.  Finally, the Debtor was hampered by the fact that the IRS has asserted a claim in excess of $3 million secured, in part, by a tax lien on all of the Debtor's assets.

4

17.    The Debtor's primary assets were the Property and the Debtor's existing inventory. The Property consists of an approximately 300,000 square foot commercial building on approximately thirty-one acres of land located at 2020 Harrison Avenue in Rockford, Illinois. The Property has various environmental problems that pre-date Debtor's ownership and is located on a Superfund site. Additionally, the Property was in need of major repairs, including repairs to the roof. In its schedules of assets and liabilities, the Debtor claimed that its inventory of books had significant value, however, much of this inventory was old (having been printed years earlier) and is not easily liquidated in bulk due to the specialized nature of the Debtor's books.

18.    The Debtor's large inventory was, in part, the result of the Debtor's antiquated practice of printing books using plates and a press, which required the Debtor to print large volumes of any single title in any single printing rather than a digital process that would have allowed the Debtor to print smaller numbers of books as needed. Additionally, the large inventory resulted in the Debtor utilizing a significant portion of the Property for storage rather than leasing the space out to third parties.

19.    Additionally, prior to the Trustee's appointment, the Debtor was involved in significant litigation with the Official Committee of Unsecured Creditors (the "Committee") and others. Among other things, the Debtor and the Committee were embroiled in extensive disputes relating to competing proposed chapter 11 plans that had been pending for nearly all of 2006. Additionally, the Debtor was involved in disputes with various other parties, including an adversary proceeding against Andrew Gardner ("Gardner"), an individual that claimed to have an exclusive right to publish one of the best selling titles in the Debtor's catalog, and state court

5

litigation with RL Leak Trucking ("RL Leak"), an action in which the Debtor sought to collect certain amounts allegedly owed for parking on the Debtor's Property.

20.     Upon his appointment, the Trustee immediately began the process of stabilizing the Debtor's finances and business operations and consulting with the Committee.  Among other things, the Trustee determined that the Debtor's printing operation was antiquated, unable to compete in the current printing market without a very significant capital investment, and required expenses, including, among other things, a large labor force, far in excess of any benefit to the Debtor.  Therefore, the Trustee, after consulting with the Committee, entered into a plan to shut down the printing operation, liquidate unnecessary equipment, and to eliminate excess overhead, including a significant down sizing of the Debtor's labor force and decreasing the Debtor's operating footprint on the Property.

21.     As part of this plan, the Trustee, among other things, reduced the Debtor's labor force by approximately two-thirds in a stepped process conducted over a period of time, and, with the Court's approval, conducted a successful auction (the "Auction") in May of a large amount of unneeded equipment and other personal property.  Through the Auction, the Trustee liquidated substantially all of the unnecessary equipment and other personal property and obtained gross proceeds of over $870,000, which proceeds were used to pay a number of claims secured by specific pieces of equipment, approximately $285,000 (the "IRS Auction Payment") of the debt owed to the Internal Revenue Service (the "IRS"), and the costs of the Auction.  To implement this course of action, the Trustee needed the expertise of labor and employment and employee benefits attorneys in addition to his normal bankruptcy counsel.

22.     The Trustee also immediately began the process of marketing and preparing the Property for sale.  Shortly after his appointment, the Trustee started discussions with various

6

parties that were potentially interested in purchasing the Property. Through these discussions, the Trustee identified a stalking horse bidder with an opening bid of approximately $1.3 million for the Property. Subsequently, the Trustee, with the Court's approval, entered into a contract, subject to certain contingencies, with another party, Rockford Industrial Holdings, LLC, following auction (the "Property Auction") for approximately $1.5 million. This contract was subject to, among other things, certain contingencies related to the environmental problems with the Property, which is located on a Superfund site. Specifically, the US EPA and the Illinois EPA previously issued covenants not to sue the Debtor with respect to the Property, and the real estate contract was contingent on an assignment of those covenants not to sue to the prevailing bidder. Approval from the US EPA and the Illinois EPA were required for this assignment to be effective. The Trustee, working with attorneys at McGuireWoods that have expertise in real estate law and environmental law, obtained the required approvals and closed this transaction on January 22, 2008.

23.    In connection with the settlement resolving the Committee's adversary proceeding against the Debtor's principal and former officer, Thomas A. Nelson, and certain purported entities owned and/or controlled by him captioned *Official Committee of Unsecured Creditors v. Thomas A. Nelson, et al.* (Adv. No. 06 A 96102) (the "Committee Adversary") previously approved by the Court, the Trustee negotiated and entered into an agreement with the California Community Foundation, a non-profit, charitable organization, for the sale (the "CCF Book Sale") of a large number of books for approximately $2 million.

24.    The Trustee also negotiated a resolution of the IRS' asserted claims, including but not limited to a purported secured claim exceeding $3.83 million and a purported priority claim exceeding $25,000. Pursuant to the terms of the settlement, as approved by the Court, the IRS

7

agreed to release all of its claims against the Debtor, including the IRS tax lien on all of the
Debtor's assets, for a total payment of $2.4 million, comprised of the IRS Auction Payment and
portions of the proceeds from the CCF Book Sale and the Property Auction, coupled with a
subordinated unsecured claim for non-pecuniary loss penalties of approximately $1 million that
will be payable only after all other general unsecured claims (that are not claims described in 11
U.S.C. § 726(a)(4)) have been paid in full. As a result of this settlement, the Debtor's estate was
freed of the IRS tax lien and the Trustee was able to bring cash in excess of $1 million into the
estate, free and clear of that lien.

25.    The Trustee also cooperated with the Committee and spent a significant amount
of time consulting with the Committee regarding his efforts to stabilize and rehabilitate the
Debtor's business, a potential sale of the Debtor's operations, and the terms of a potential chapter
11 plan to be proposed by the Committee. During these discussions, the Trustee, with his
counsel, actively researched and evaluated various of the Committee's proposals that raised a
number of complicated tax and securities issues. In order to evaluate the Committee's proposals,
the Trustee has had to consult with various tax and securities attorneys in addition to his normal
bankruptcy counsel.

26.    During discussions with the Committee regarding its anticipated proposal of a
chapter 11 plan, the Trustee was approached by Good Will Publishers, Inc., and its affiliate Saint
Benedict Press (collectively, "Good Will"), third party publishers, regarding the potential
purchase of substantially all of the Debtor's operating assets and business operations. During
these discussions, the Trustee negotiated and entered into a non-disclosure agreement allowing
Good Will to conduct a due diligence review of Debtor's records and assets.

8

27.    The Trustee ultimately successfully negotiated, subject to the Court's approval, an asset purchase agreement (the "APA") with Good Will.    Under the APA, Good Will would pay to the Trustee approximately $1 million (subject to various adjustments) at closing and would acquire substantially all of the Debtor's operating assets, including the assignment of certain unexpired leases and executory contracts.    Additionally, Good Will would continue to make annual payments to the Trustee for a period of ten years following the closing equal to 5% of Good Will's gross annual revenues from the sale of TAN's titles.    The APA was contingent upon, among other things, the entry of an order of the Court approving the sale to Good Will, pursuant to section 363 of the Bankruptcy Code or an order confirming a chapter 11 plan, by September 30, 2008. Good Will subsequently agreed to extend this deadline to October 15, 2008 (as further defined below, the "APA Deadline").

28.    Throughout the Trustee's negotiations with Good Will, the Committee continued to express its preference to confirm a chapter 11 plan in this case.    Therefore, the Trustee and his counsel continued discussions with the Committee regarding the terms of a potential plan providing creditors with the option of either reorganizing the Debtor or selling the Debtor's assets to Good Will under the APA.

29.    On August 29, 2008, with the original APA Deadline (September 30, 2008), quickly approaching and in the absence of a chapter 11 plan, the Trustee filed a motion (the "Sale Motion") **[Docket No. 651]** to sell substantially all of the Debtor's operating assets pursuant to the APA under sections 363 and 365 of the Bankruptcy Code in order to preserve the sale to Good Will.

30.    Shortly thereafter, on September 10, 2008, the Committee proposed an optional chapter 11 plan (the "Committee Plan") **[Docket No. 655]** giving creditors the option to either

9

reorganize the Debtor or sell the Debtor's assets pursuant to the APA.  Through out this period, the Trustee and his counsel provided extensive comments to the Committee's disclosure statement **[Docket No. 662]** and continued to work with the Committee in an effort to prepare the Committee Plan for a creditor vote and confirmation hearing by the APA Deadline (which was extended to October 15, 2008).  During these discussions, the Trustee consulted extensively with his bankruptcy attorneys and, in certain instances, tax and securities attorneys, in order to evaluate various aspects of the Committee Plan.

31.    At the continued confirmation hearing, the Committee ultimately withdrew the Committee Plan, and the Trustee moved forward with the Sale Motion and presented evidence and argument in support of the sale to Good Will.  Following an evidentiary hearing, the Court approved the sale pursuant to the APA over the Committee's objection, allowing the Trustee to move forward with the sale to Good Will.  The Trustee has since closed the sale to Good Will and brought approximately $1 million in additional funds into the Debtor's estate.

32.    The Trustee addressed several issues related to the Debtor's ongoing business operations.  Among other things, the Trustee reviewed various licensing issues and attempted to negotiate licensing agreements in the ordinary course of the Debtor's business, addressed various issues related to the Debtor's lease of a portion of the Property, and handled employment and benefits matters related to the Debtor's employees.  In addressing these issues, the Trustee has needed the advice of copyright and intellectual property attorneys in addition to his bankruptcy counsel.

33.    Upon the Court's approval of the APA and closing of the sale to Good Will, the Trustee and his counsel attended to many important details related to the closing including review of the closing documents and payout calculations and figures, review of certain executory

contracts assumed by Good Will and cure issues related thereto, and certain issues related to real property leases.

34.    Subsequent to the Court's approval of APA and during the Compensation Period, the Trustee's counsel engaged in significant efforts to draft and submit a Chapter 11 Liquidating Plan (the "Liquidating Plan") for the Court's approval. As part of these efforts, the Trustee and his counsel investigated the merits of a converting the case to one under Chapter 7 of the Code versus filing a Chapter 11 Liquidating Plan.    After consultation, the Trustee and his counsel ultimately determined that a Liquidating Plan was preferable for the Debtor's situation. The Trustee's counsel then spent a considerable amount of time drafting the Trustee's Chapter 11 Plan, the Trustee's Revised Chapter 11 Plan of Liquidation, and the accompanying Disclosure Statement, and as part of such drafting addressed the structure of the plan as it relates to various classes of creditors claims, considered the tax implications and administration issues related to the structure of the plan with the consultation of tax attorneys and accountants, and devised the distribution scheme of the plan based on all complex considerations facing the Plan. Moreover, the Trustee and his counsel considered and addressed issues relating to the Liquidating Trust contemplated by the Liquidating Plan and drafted and distributed notice of the Liquidating Plan and Disclosure Statement and voting ballots associated therewith.

35.    The Trustee submitted the Plan to the Court and solicited creditors' votes in favor of the Plan.    Following an overwhelming creditor vote in favor of the Plan, the Committee objected to its confirmation asserting many of the same or similar objections that the Committee raised in conjunction with the sale to Good Will pursuant to the APA.    Therefore, the Trustee and his counsel spent a significant amount of time preparing for and conducting a contested hearing on the confirmation of the Plan (the "Confirmation Hearing"), including the presentation

11

of significant oral testimony and documentary evidence in support of Plan confirmation. At the contested Confirmation Hearing, the Court overruled the Committee's objections and confirmed the Plan.

36.    Since the Confirmation Hearing, among other things, the Trustee and his counsel have analyzed the approximately 900 claims asserted against the Estate. Many of the proofs of claim filed by creditors did not include sufficient information to justify the amount asserted in the proofs of claim. Additionally, several creditors asserted claims that had already been paid or asserted a priority to which they are not entitled under the Bankruptcy Code. Nonetheless, given the fact that the majority of the claims asserted in this bankruptcy were submitted by individuals (many of whom are senior citizens), the Trustee made a substantial effort to verify the amounts asserted by the creditors against the Debtor's books and records. In an effort to keep expenses down, the Trustee performed much of this analysis with his staff. However, in certain instances McGuireWoods analyzed claims and reviewed materials obtained through informal discovery, particularly related to large claims, and prepared appropriate claims objections. The Trustee's counsel is currently in discussions with certain creditors in the hopes of resolving certain issues through stipulations with these creditors and prosecuting the various objections to claims filed in the case (including conducting discussions with relevant creditors and parties-in-interest).

37.    Additionally, during the Compensation Period, the Trustee and his counsel worked with the Trustee's tax accountants and the Debtor's bookkeeper to address various tax issues in conjunction with the Liquidating Trust to be established pursuant to the Plan and the preparation of the Debtor's final tax returns. Due to the nature of certain unique tax issues principally relating to the remaining amounts due under the APA and the nature of the Liquidation Trust, as well as a need to for the Debtor's bookkeeper to correct and complete

12

certain entries in the Debtor's books and records, the Trustee and his counsel have spent a significant amount of time addressing tax related concerns.

38.    During the Compensation Period, the Trustee also discovered two insurance policies on the life of Thomas Nelson, the sole equity holder of the Debtor, that have a cash surrender value but were not listed in the Debtor's schedule of assets. The Debtor may have an interest in these life insurance policies. The Trustee's counsel is currently reviewing these issues and will pursue any action that is necessary or appropriate.

39.    Finally, the Trustee and his counsel have addressed and continue to respond to numerous inquiries from creditors throughout the Compensation Period, particularly relating to the Plan confirmation process and issues related to claims.

40.    As a result of the Trustee's management and actions, the Debtor's estate currently has approximately $2.4 million in cash (the "Available Funds").

41.    Due to McGuireWoods' ongoing representation of the Trustee, particularly in connection with negotiations related to certain claims and objections to other claims and the investigation regarding the unscheduled life insurance policies, as well as the anticipated hearing on the various objections to claims and on this Application, McGuireWoods has included the Stub Estimate in the amount of $15,000 for any services provided during the Stub Period. As stated above, McGuireWoods intends to file the Stub Period Supplement detailing the actual services provided and the actual fees incurred during the Stub Period. McGuireWoods will make any appropriate adjustment to its requested Compensation based on the Stub Period Supplement.

42.    McGuireWoods is seeking the allowance and prompt payment of the Compensation and Expense Reimbursement from the Available Funds.

13

43.    The total hours and the normal hourly rates[*] charged by the principals, associates, and legal assistants of McGuireWoods for the period covered by this application are as follows:

| Name | Title | Specialty | Total Hours | Rate ($/hour) | Total Value |
|---|---|---|---|---|---|
| Richard J. Mason | Partner | Bankruptcy | 29.90 | $600 | $ 17,940.00 |
| John F. Pollick | Partner | Bankruptcy and Real Estate | 111.40 | $475 | $ 52,915.00 |
| Michael M. Schmahl | Associate | Bankruptcy | 318.80 87.90 | $450 $400 | $143,460.00 $ 35,160.00 |
| Paul J. Catanese | Associate | Bankruptcy | 7.20 | $295 | $ 2,124.00 |
| Charles E. Roberts | Partner | Tax | 2.80 .50 | $565 $510 | $ 1,582.00 $ 255.00 |
| Thomas E. Taylor | Partner | Tax | 7.70 2.40 | $525 $460 | $ 4,042.50 $ 1,104.00 |
| Jonathan G. Neal | Associate | Tax | 32.40 2.30 | $335 $280 | $ 10,854.00 $ 644.00 |
| Kimberly McFarland | Paralegal | Bankruptcy | 4.50 1.10 | $195 $175 | $ 877.50 $ 192.50 |
| Total* | | | 608.90 | | $271,150.50 |

44.    The blended hourly rate of attorneys and paraprofessionals representing the Trustee in this case is approximately $445.31.

## Nature of Services Performed by McGuireWoods

45.    All services performed by McGuireWoods for which compensation is being sought were performed for and on behalf of the Trustee.

46.    This Application has been prepared with the intention of complying with the applicable standards set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and Local Rule of Bankruptcy Procedure 5082-1.

a. ——————————————

[*] McGuireWoods periodically alters the normal hourly rates for its attorneys and paraprofessionals in the ordinary course of its business. Compensation requested in this Application is the Total shown in this chart, plus the Stub Estimate of $15,000. See Paragraphs 15 and 41 above.

14

Document   Page 22 of 30

47.     None of the payments received by McGuireWoods will be shared with any other party, nor are these payments subject to any sharing arrangement between McGuireWoods and any third party.

48.     In accordance with section 330 of the Bankruptcy Code, McGuireWoods represents that the amount of fees and expenses are fair and reasonable given: (a) the complexity of this case and the relevant adversary proceedings; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; and (e) the costs of comparable services other than in a case under the Bankruptcy Code.

49.     For the Compensation Period, McGuireWoods provided a wide variety of legal services to the Trustee. The services McGuireWoods performed during the Compensation Period are categorized and described in detail in the itemized statement attached hereto and made a part hereof as Exhibit A. At the end of each category is a list of each attorney or paraprofessional and the total number of hours (and the corresponding dollar value) spent on that matter. The following chart is a brief overview of the services provided by McGuireWoods for which it seeks compensation and includes the approximate hours expended and the approximate value of those services.

| Nature of Services | Approximate Hours | Approximate Value |
|---|---|---|
| 0001- Case Administration | 43.30 | $ 19,420.00 |
| 0002- Creditors and Claims | 93.30 | $ 41,698.50 |
| 0011- Real Estate and Environmental Matters | .70 | $      332.50 |
| 0012- Sale of Personal Property | 2.80 | $   1,270.00 |
|  |  |  |

| 0015-<br>Professional Retention and Fee Applications | 45.70 | $ 19,290.50 |
|---|---|---|
| 0050-<br>Plan, Sale, and Related Matters | 421.10 | $189,139.00 |
| **Total**[*] | **608.90** | **$271,150.50** |

50.   A general summary of the services provided by McGuireWoods to the Trustee during the Compensation Period, includes but is not limited to:

a.   <u>Case Administration</u>:  During the Compensation Period, McGuireWoods has: (i) reviewed all pleadings filed with the Court; (ii) appeared or participated telephonically at all relevant court hearings; (iii) tracked any relevant deadlines in this bankruptcy case; (iv) maintained service lists of creditors and parties in interest; (v) communicated with the Trustee and other parties in interest regarding all of the hearings in this case; (vi) responded to inquiries and requests from the United States Trustee; (v) filed relevant monthly reports; and (vi) coordinated the filing of tax returns. **Total Fees: $19,420.00**

b.   <u>Creditors and Claims</u>:  During the Compensation Period, McGuireWoods (i) reviewed and analyzed various of the secured, administrative, priority, and unsecured claims that have been asserted against or listed by the Debtor in this case and (ii) responded to all of inquiries received from creditors; and (iii) prepared four claims objections to over 100 claims. **Total Fees: $41,698.50**

c.   <u>Real Estate and Environmental Matters</u>:  During the Compensation Period, McGuireWoods performed services for the Trustee with respect to the review of a certain lease issues and utility charges. **Total Fees: $332.50**

a.   ―――――――――――――

* To be supplemented by the Stub Period Supplement described in Paragraphs 15 and 41 above.

d.    Sale of Personal Property:    During the Compensation Period, McGuireWoods performed certain services related to the matters related to the closing of the APA. Among other things, McGuireWoods: (i) reviewed documents and final figures related to the purchase of certain assets by Good Will pursuant to the APA; (ii) addressed issues related to the assumption of certain executory contracts and related cure issues; (iii) corresponded with the Trustee and other parties regarding issues related to the closing of the APA; and (iv) reviewed relevant materials and otherwise investigated the facts and circumstances related to the unscheduled life insurance policies. **Total Fees: $1,270.00**

e.    Professional Retention and Fee Applications:    During the Compensation Period, McGuireWoods provided services to the Trustee related to the retention of professionals and fee applications in this bankruptcy. Among other things, McGuireWoods: (i) prepared the fourth interim application for compensation and this Application for McGuireWoods and the fourth interim fee application and the final fee application for the Trustee; (ii) corresponded with various parties regarding the payment of the professional fees; and (iii) drafted the retention application for and appeared on behalf of HCL, accountants retained to address certain tax issues. Additionally, McGuireWoods addressed any issues raised by the Trustee or other parties related to these matters and conducted discussions, when appropriate, with the Committee's counsel, the United States Trustee, and any other relevant party. **Total Fees: $19,290.50**

f.    Plan, Sale and Related Matters:    During the Compensation Period, McGuireWoods provided extensive services to the Trustee related to a Chapter 11 Plan Liquidating Plan. Among other things, McGuireWoods: (i) evaluated the relative merits of a liquidation pursuant to the Plan or a conversion to chapter 7; (ii); drafted the Plan and Disclosure Statement; (iii) prepared the Liquidating Trust Agreement; (iv) performed relevant legal research

17

and analysis of various complex tax, bankruptcy, securities, and other issues related to the Plan and the Liquidating Trust; (v) corresponded with the Trustee and other parties, including the United States Trustee and the Committee's counsel in connection with the Plan; (vi) prepared for and participated in the hearing on the Disclosure Statement; and (vii) prepared for and presented evidence at the contested Confirmation Hearing. **Total Fees: $189,139.00**

51.     All of the services summarized above were reasonably necessary in order that the interest of the estate and its creditors be adequately represented and defended and to maximize the recovery to the estate and its creditors.

## Computation of Compensation

52.     The services performed by McGuireWoods during the Compensation Period required a total time expenditure of 608.90 hours on the part of the principals, associates and paraprofessional of McGuireWoods, plus hours to be expended by them during the Stub Period. The services for which McGuireWoods is seeking compensation are set forth with particularity in Exhibit A. Based on the nature, extent and value of the services for which McGuireWoods is seeking compensation, the time spent on such services and the cost of comparable services other than in a case under the Bankruptcy Code, such services have a value of not less than $286,150.50.[*]

## Expenses

53.     In addition, McGuireWoods incurred certain reasonable and necessary expenses during its representation of the Trustee in the amount of $19,268.23. A detailed breakdown of these expenses is contained in Exhibit A. The expenses relate to charges for: (i) in-house and outside copy charges; (ii) courier and messenger services charges; (iii) long distance telephone a.

---

[*] This figure includes the Stub Estimate, which is subject to adjustment as set forth in Paragraphs 15 and 41 above.

charges; (iv) computer research charges; (v) transcript charges; (vi) transportation charges; and (vii) postage.

54.    A summary of these reasonable and necessary expenses is provided below:

a.    In-House Copying ($1,220.00): McGuireWoods bills $0.10 per page for all regular internal copies. Such charges are reasonable and customary in the legal industry, representing costs of copy materials, outside services, acquisition, maintenance, storage and operation of copy machines, and maintaining the copy center.

b.    Outside Copying ($6,646.50): McGuireWoods uses an outside copying service for certain large copying jobs, such as, in this case, making hundreds of copies of the Trustee's plan, disclosure statement and related attachments.

c.    Courier and Messenger Services ($116.93): McGuireWoods uses various reliable third party courier and messenger services, including but not limited to Federal Express, to deliver certain documents to parties on an expedited basis. McGuireWoods seeks reimbursement for actual expenses charged by these third party courier and messenger services.

d.    Long Distance Telephone ($86.83): McGuireWoods seeks reimbursement of expenses for long distance calls incurred in representing the Trustee in these cases.

e.    Computer Research ($701.22): McGuireWoods seeks reimbursement of actual expenses incurred in obtaining a transcript of a court hearing in this case.

f.    Transcript ($152.20): McGuireWoods seeks reimbursement of actual expenses incurred in performing computer legal research using Westlaw, Lexis-Nexis, and PACER in this case.

g.    Transportation ($397.94): McGuireWoods seeks reimbursement for expenses incurred for travel between McGuireWoods' office and the courthouse and/or various

19

other offices for hearings, depositions, interviews, and meetings in this case. No reimbursement is sought for normal transportation expenses incurred by individual attorneys for travel between his or her home and the office.

     h.    <u>Postage ($9,946.61)</u>:  McGuireWoods seeks reimbursement of actual postage expenses incurred in sending correspondence, notices, pleadings and other documents to appropriate parties in this case.

<b><u>Final Application</u></b>

55.    McGuireWoods has filed four previous applications for interim compensation and expense reimbursement. The following chart summarizes: (i) the date each application was filed; (ii) the period of services covered; (iii) the compensation and expenses requested; (iv) the date and amount of allowance; and (v) the dates the allowances were paid:

|  | Date Filed | Period Covered | Total Requested | Total Allowed | Date Allowed |
|---|---|---|---|---|---|
| First Application | July 16, 2007 | December 18, 2006- June 13, 2007 | $38,043.57 | $38,043.57<br><br>[Docket No. 505] | July 25, 2007 |
| Second Application | November 30, 2007 | December 18, 2006- October 31, 2007 | $280,498.38 | $275,648.38<br><br>[Docket No. 557] | December 27, 2007 |
| Third Application | June 24, 2008 | November 1, 2007- April 30, 2008 | $215,830.81 | $209,830.81<br><br>[Docket No. 630] | July 16, 2008 |
| Fourth Application | December 3, 2008 | May 1, 2008– October 31, 2008 | $239,626.06 | $239,626.06<br><br>[Docket No. 1004] | December 24, 2008 |

56.    Accordingly, McGuireWoods requests that the Court grant as final compensation and expense reimbursement the following:

20

a.      $38,043.57 in fees and expenses for its First Application (as previously allowed on an interim basis on July 25, 2007);

b.      $275,648.38 in fees and expenses for its Second Application (as previously allowed on an interim basis on December 27, 2007);

c.      $209,830.81 in fees and expenses for its Third Application (as previously allowed on an interim basis on July 16, 2008);

d.      $239,626.06 in fees and expenses for its Fourth Application (as previously allowed on an interim basis on December 24, 2008); and

e.      $305,418.73 in Compensation and Expense Reimbursement for the Compensation Period.

57.      McGuireWoods also requests that the Trustee be authorized and directed to pay to it the total allowances, less the sums previously paid, leaving an unpaid balance of $305,418.73, calculated as follows:

> First Application....................$  38,043.57
>
> Second Application.................$ 275,648.38
>
> Third Application....................$ 209,830.81
>
> Fourth Application............... ...$ 239,626.06
>
> Final Compensation Period........$  305,418.73
>
> Total................................$1,068,567.55
>
> <u>Less:</u>   Previous Payments......   ($   38,043.57) (July 25, 2007)
>
>                              ($ 140,435.13) (December 27, 2007)
>
>                              ($ 135,213.25) (February 27, 2008)
>
>                              ($ 209,830.81) (July 16, 2008)
>
>                              ($ 239,626.06) (December 24, 2008)

21

Total Additional Payment Owed:    $ 305,418.73.

**Notice**

58.    Section 330 of the Bankruptcy Code requires notice and a hearing before any action on this Application. McGuireWoods has mailed a copy of the notice (the "Notice") of this Application to (i) the creditors on the list of the twenty largest creditors of the Debtor, (ii) the United States Trustee, and (iii) those parties who have requested receipt of pleadings in these cases pursuant to Federal Rule of Bankruptcy Procedure 2002. A copy of the Notice is attached hereto as Exhibit B. Since the foregoing parties have been the most active in these cases, the McGuireWoods requests that the Court determine that such notice is adequate and appropriate under the circumstances. Additionally, a complete copy of this Application with all supporting exhibits has been served electronically on all parties receiving electronic notices from the Court pursuant to the Court's electronic filing system (a/k/a ECF). McGuireWoods will make copies of this Application and all supporting documentation available to any party in interest that submits a written request to Michael M. Schmahl via regular mail at McGuireWoods LLP, 77 W. Wacker Drive, Suite 4100, Chicago, IL 60601; via facsimile at (312) 920-6598; or via electronic mail at mschmahl@mcguirewoods.com.

WHEREFORE, McGuireWoods prays this Court enter an order: (i) rendering final the interim compensation and expense reimbursement previously allowed on McGuireWoods' First Application, Second Application, Third Application and Fourth Application; (ii) allowing McGuireWoods' Compensation for legal services rendered during the Compensation Period in the amount of $286,150.50, subject to adjustment of the Stub Estimate as set forth above; (iii) allowing reimbursement of expenses to McGuireWoods relating to the Compensation Period in the amount of $19,268.23; (iv) rendering as Final the Compensation and Expense Reimbursement for Compensation Period and directing the Trustee to disburse such

22

compensation and reimbursement; (v) approving the form and manner of notice provided to creditors and other parties in interest; and (vi) granting such further relief as the Court deems just or appropriate.

Dated:  August 27, 2009                                   Respectfully submitted,

                                                          MCGUIREWOODS, LLP

                                                          By: /s/  Michael M. Schmahl
                                                              Michael M. Schmahl


Richard J. Mason, P.C. (ARDC #01787659)
John F. Pollick (ARDC #03128122)
Michael M. Schmahl (ARDC #06275860)
Paul J. Catanese (ARDC #06292530)
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, Illinois  60601-1815
(312) 849-8100
(312) 920-9928 (FAX)
Attorneys for Fred Caruso,
Trustee for the Chapter 11 Bankruptcy Estate of
Tan Books & Publishers, Inc.